NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0733n.06
Filed: August 22, 2005

No. 04-3899

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| DOROTHY B. BACH, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| FIRST UNION NATIONAL BANK, | ) | STATES DISTRICT COURT FOR THE |
| | ) | SOUTHERN DISTRICT OF OHIO |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

Before: GIBBONS and COOK, Circuit Judges, and PHILLIPS, District Judge.[*]

**JULIA SMITH GIBBONS, Circuit Judge**. Dorothy B. Bach sued First Union National

Bank ("FUNB"), alleging (1) a violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §

1681s-2(b); (2) negligence; (3) intentional infliction of emotional distress; (4) defamation; (5)

invasion of privacy; and (6) a violation of the Fair Credit Billing Act, 15 U.S.C. § 1666(a). At the

close of plaintiff's case, the district court granted FUNB's motion pursuant to Federal Rule of Civil

Procedure 50(a) for a judgment as a matter of law on all claims except the FCRA claim. The jury

found that FUNB had willfully violated the FCRA and awarded Bach $400,000.00 in compensatory

damages and $2,628,600.00 in punitive damages. After the verdict, FUNB brought a motion for a

---

[*]The Honorable Thomas W. Phillips, United States District Judge for the Eastern District of
Tennessee, sitting by designation.

judgment as a matter of law pursuant to Rule 50(b) and a motion for a new trial or amendment of judgment pursuant to Rule 59(a). The district court denied the motions. FUNB now appeals.

For the following reasons, we affirm the district court's denial of FUNB's motion with respect to actual damages awarded. Further, we affirm the district court's ruling that the compensatory damage award was not excessive. Additionally, we find that the district court did not abuse its discretion in denying FUNB's motion for a new trial pursuant to Rule 59(a). However, because the punitive damages awarded in this case were unconstitutionally excessive, we reverse and remand on the punitive damages issue.

**I.**

Dorothy B. Bach is a seventy-seven year old retired widow who resides in West Carrollton, Ohio. Bach possesses assets totaling approximately $224,000.00 and has a monthly income of approximately $1,800.00. In March, 1999, Heidi Bake, Bach's granddaughter and a Florida resident, opened a checking account at FUNB in her own name. At some time during that month, Bach's name was added to the checking account. On several occasions, funds were wired from Bach's accounts to the FUNB checking account. The account eventually became overdrawn and was closed. Bach stated at trial that she never had any knowledge of the existence of the FUNB account.

In May, 1999, a credit card account was opened with FUNB in Bach's name but listing Heidi Bake's address. The credit card was issued by FUNB pursuant to a phone application based on Bach's clean credit history. It does not appear that FUNB took any action to verify Bach's identity.

By the end of the first billing cycle, the balance on the card was $20,256.29. Between May and August, 1999, the balance on the card rose to $24,938.92, most of which was never paid.

In October, 1999, Bach applied for a line of credit with the First Federal Savings Bank of Germantown. Bach's application was denied due to her credit report, which reflected delinquencies in payment on accounts with FUNB and American Express. Bach had not been previously aware of either account. Upon learning of the existence of these two accounts opened in her name, Bach sent letters to FUNB and American Express seeking to inform them that the accounts in her name were opened fraudulently and without her consent. American Express responded by directing the credit reporting agencies to delete its account from Bach's credit report. FUNB denied during trial having ever received Bach's correspondence. Despite this contention, FUNB contacted Bach in late October, 1999. FUNB's record of the conversation indicates that the FUNB representative asked Bach whether she wanted to file a fraud report, to which she responded negatively. Bach stated that the address listed on the account was that of her granddaughter, but Bach stated that she did not wish to press charges against her granddaughter. FUNB and Bach spoke many times between November 1999 and February 2000. According to Bach, these phone calls were harassing in nature, as FUNB repeatedly sought to induce Bach to pay the outstanding debt on the account, despite the fact that Bach insisted that the account was not hers. Because Bach repeatedly declined to complete a fraud affidavit, FUNB did not remove Bach's name from the account, despite the fact that FUNB executives admitted at trial that they knew fraud had been committed with regard to the accounts. In April 2000, FUNB decided to close the account as uncollectable.

On January 30, 2000, Bach suffered a stroke which left her with limited capacity to care for herself. Heather Bake, one of Bach's granddaughters, helped care for Bach during her recovery.

In an effort to ease Heather's burden of caring for Bach, Bach signed a purchase contract on the condominium located next to Bach's place of residence. Because the purchase agreement was contingent upon Bach's obtaining a loan, Bach submitted a Uniform Residential Loan Application to Artisan Mortgage Services, Inc. Bach sought to borrow $64,000 to purchase the condominium. The mortgage loan was denied due to "excessive obligation in relation to income and delinquent past or present credit obligations with others" based on the outstanding obligations due to FUNB listed on Bach's credit report.

On August 10, 2000, Bach received a letter from First USA Bank informing her that her credit line would be reduced to $11,150.00 due to a recent charge-off listed in a report received from a consumer reporting agency.

On August 16, 2000, Bach sent letters to three national credit bureaus–Equifax Credit Report, Experian, and Trans Union Corporation–informing them that the information regarding the delinquent accounts provided by FUNB was based on accounts which Bach did not open and which FUNB knew were the products of fraud. Peter Jeeter, an employee of CBC Companies, a credit reporting agency that operates credit bureaus with Equifax, Experian, and Trans Union, testified at trial that CBC received notice of the dispute from Equifax. CBC sent a dispute form to FUNB on September 5, 2000. The dispute form asked FUNB to verify the allegations of fraud on Bach's account. Upon receiving the form, FUNB crossed out "fraud" and wrote "Not fraud" in its place, stating on the form, "We closed as uncollectable due to customer age and condition." FUNB also recommended that CBC change Bach's revolving credit rating from a five to a nine, the worse possible score. As a result, CBC continued to report negative information regarding Bach's credit history until November or December 2001. Trans Union sent FUNB a request to verify the

- 4 -

allegations of fraud on August 25, 2000. FUNB responded, indicating that Bach had one account with FUNB with a debt in the amount of $25,800.00 and another account with an outstanding debt of $27,300.00.

Bach testified that at some point in 2001, she applied to Union Savings Bank for a mortgage loan in order to purchase the condominium adjacent to hers. Union Savings Bank agreed to give her a loan on the condition that she use her own condominium as collateral. In an earlier deposition, Bach had testified that she was told that she had been denied the loan because "[she] could not afford it. [She did not] have much income and [she] could not make–they said that [she] could not make the big payment on that loan." Bach found the condition of using her own condominium as collateral to be unsatisfactory and therefore abandoned her efforts to follow through on the purchase contract on the second condominium.

In March, 2001, Bach applied to Union Savings Bank for a residential mortgage loan on her own condominium. The credit reports prepared by CBC for that application listed the credit card and checking account debt Bach supposedly owed FUNB as written off. Union Savings granted Bach a $25,000.00 line of credit secured by her residence. On November 21, 2001, Bank One denied Bach's application for a Master Card Platinum credit card based on a credit report issued by Trans Union which contained information regarding "credit accounts now delinquent[,] number of accounts ever delinquent[, and] total available revolving credit."

On April 4, 2001, Bach filed a complaint against FUNB in Ohio state court, asserting extortion, coercion, gross negligence, identity theft, intentional infliction of emotional distress, defamation, intentional tort resulting in harm, and invasion of privacy in violation of Ohio state law, violations of the Ohio Consumer Sales Practices Act and the Ohio Defective Trade Practices Act,

and continued reporting of false information in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2 and the Fair Credit Billing Act, 15 U.S.C. § 1666(a). FUNB removed the action to federal court. A jury trial commenced on December 8, 2003. At the close of Bach's case, FUNB made a motion for a judgment as a matter of law on all of Bach's claims. While the motion was pending, FUNB called Fernando Durand, a FUNB representative, as a witness for the purpose of authenticating various exhibits. The district court then granted FUNB's motion with regard to all claims except Bach's FCRA claim. After the district court's ruling, FUNB presented Bach as a witness. After Bach's testimony, FUNB rested its case. FUNB did not at this point renew its motion for a judgment as a matter of law.

The case was submitted to the jury on December 11, 2003. The jury returned a verdict finding FUNB liable for willfully violating the FCRA and awarded Bach $400,000.00 in compensatory and $2,628,600.00 in punitive damages. On July 6, 2004, the district court denied FUNB's post-verdict motions for judgment as a matter of law, remittitur, and a new trial, and entered judgment for Bach. FUNB filed a notice of appeal from the district court's judgment on July 9, 2004.

## II.

The FCRA imposes a duty upon furnishers of credit information to report accurate information to consumer reporting agencies regarding a consumer's credit. 15 U.S.C. § 1681s-2(a)(1)(A). Upon receiving notice from a credit reporting agency that a consumer disputes the information a furnisher has provided, the furnisher is required to (1) investigate the veracity of the disputed information; (2) review the information provided by the credit reporting agency; (3) report the results of the investigation; and (4) correct any inaccuracies uncovered by the investigation. *Id.*

§ 1681s-2(b)(1)(A)-(D).  While a consumer cannot bring a private cause of action for a violation of

a furnisher's duty to report truthful information, a consumer may recover damages for a willful

violation of 15 U.S.C. § 1681s-2(b)(1)(A)-(D).  *Stafford v. Cross Country Bank*, 262 F. Supp. 2d

776, 782-83 (W.D. Ky. 2003).

### A.    **Actual Damages**

The district court rejected FUNB's argument regarding actual damages, finding that (1)

FUNB had waived its right to seek post-verdict judgment as a matter of law by failing to renew its

motion at the close of all of the evidence, and (2) even if FUNB had not waived its right to seek

judgment as a matter of law with respect to actual damages, Bach produced sufficient evidence of

actual damages in the form of "emotional pain and suffering, humiliation, lost credit opportunities

and damage to her reputation for creditworthiness" to support the jury award.  In finding the jury

award to be proper, the district court specifically relied on evidence that Bach had failed to obtain

a mortgage loan and a credit card account due to FUNB's violation.

FUNB first argues that it is entitled to a judgment as a matter of law with respect to the issue

of actual damages.  Where a furnisher is found to have willfully violated § 1681s-2(b)(1), the

consumer-plaintiff may recover "actual damages sustained by the consumer as a result of the failure

or damages of not less than $100 and not more than $1,000."  15 U.S.C. § 1681n(a)(1)(A).  On

appeal, FUNB argues that (1) it has not waived its right to seek a judgment as a matter of law on this

issue, and (2) because Bach has failed to produce evidence that she suffered any actual damages

caused by FUNB's violation, her award of damages should have been limited to the statutory award.

1.      **Waiver of Right to Pursue a Judgment as a Matter of Law Pursuant to Rule 50(b)**

The district court's determination that FUNB waived its right to seek judgment as a matter of law by not renewing the motion at the close of all the evidence is a mixed question of law and fact. Therefore, the factual determinations underlying the decision are reviewed for clear error while the legal conclusions are reviewed *de novo*. *Karam v. Sagemark Consulting, Inc.*, 383 F.3d 421, 426 (6th Cir. 2004).

As noted above, FUNB made a motion for judgment as a matter of law at the close of Bach's case with respect to all claims. This motion was granted with respect to all claims except the FCRA claim. After presenting the testimony of Durand and Bach, FUNB rested without renewing its motion for a judgment as a matter of law with respect to the FCRA claim.

"It is well-settled that a court can only consider a motion for a judgment [as a matter of law] *only if* the moving party has previously made a motion [for a judgment as a matter of law] at the close of all the evidence." *United States* ex rel. *A+ Homecare, Inc. v. Medshares Mgmt. Group, Inc.*, 400 F.3d 428, 447 (6th Cir. 2005) (internal quotation marks and citation omitted). However, a technical deviation of this rule may be overlooked, allowing the claim to go forward despite the non-compliance, provided that the purposes of Rule 50(b) have been served. This court has held that a Rule 50(b) motion can go forward despite the failure to renew the motion at the close of all the evidence in two scenarios: (1) "[t]he court indicated that the renewal of the motion would not be necessary to preserve the party's rights," or (2) "[t]he evidence following the party's unrenewed motion for a directed verdict was brief and inconsequential." *Id.* at 448. A review of the record in this case reveals that the district court did not indicate that it would be unnecessary for FUNB to

renew its motion in order to preserve its rights. Therefore, the question is whether FUNB's proof was sufficiently "brief and inconsequential" such that FUNB's failure to renew its motion does not result in a waiver of its rights.

FUNB argues in its brief that its failure should be overlooked because Bach's testimony was brief and related only to FUNB's liability, not to the propriety of damages. Bach's testimony, which spans approximately eight pages of transcript, primarily concerns Bach's decision not to press charges against her granddaughter for the fraud committed against her. Bach was not cross-examined regarding this testimony. At the end of the examination, FUNB rested and the court adjourned. It was at this time that FUNB should have renewed its motion.

Upon these facts, we find that FUNB did not waive its right to seek a judgment as a matter of law on the issue of actual damages after the verdict. FUNB's proof was brief and, as FUNB asserts, was inconsequential on the issue of damages. *See, e.g.*, *Chain v. Tropodyne Corp.*, No. 99-6268, 99-6269, 2000 WL 1888719, at * 3 (6th Cir. Dec. 20, 2000) (allowing Rule 50(b) motion to proceed despite movant's failure to renew motion at the close of all of the evidence where movant filed Rule 50(a) motion at the close of plaintiff's case, which occurred on the same day as the close of all of the evidence). Although substantive testimony was elicited during FUNB's examination of Bach, the examination focused on the issue of FUNB's liability rather than on what damages, if any, were appropriately attributable to FUNB's actions. Both the court and Bach were on notice due to the filing of FUNB's motion for a judgment as a matter of law at the close of Bach's case that FUNB contended that Bach had failed to prove actual damages, and therefore, the purposes of Rule 50(b) were served in this case. *See Gutzwiller v. Fenik*, 860 F.2d 1317, 1331 (6th Cir. 1988) (finding that the purposes of Rule 50(b) had been served, and thus technical non-compliance with

Rule 50(b) would be overlooked, where both the court and opposing party were on notice of movant's challenge to the sufficiency of the evidence). Thus, contrary to the findings of the district court, we find that FUNB's motion for a judgment as a matter of law was properly before the district court, and the appeal from the district court's ruling on that issue is properly before us on appeal.

2.      **Evidence of Actual Damages**

We review the district court's denial of a motion for judgment as a matter of law *de novo*. *Barnes v. City of Cincinnati*, 401 F.3d 729, 736 (6th Cir. 2005). A judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) may only be granted where, in viewing the evidence in the light most favorable to the non-moving party, no genuine issue of material fact remains for the jury, and all reasonable minds would necessarily find in favor of the moving party. *Gray v. Toshiba Am. Consumer Prods., Inc.*, 263 F.3d 595, 598 (6th Cir. 2001). In reviewing the district court's decision not to grant judgment as a matter of law, we may not weigh the credibility of witnesses nor may we substitute our own judgment for the jury verdict. *United States v. Alpine Indus., Inc.*, 352 F.3d 1017, 1022 (6th Cir. 2003).

FUNB argues that Bach failed to prove that she suffered any actual damages arising from FUNB's FCRA violation. In order to recover actual damages, a plaintiff must show that the violation of the statute caused the loss of credit or some other harm. *Crabill v. Trans Union, LLC*, 259 F.3d 662, 664 (7th Cir. 2001). The district court specifically referenced the second denial of Bach's mortgage application that she sought in order to purchase the adjacent condominium and her rejected credit card application. As FUNB notes in its brief, the district court was not entirely correct in stating that Bach's mortgage application was denied; in fact, the mortgage loan was subject to the condition that Bach use her own condominium as collateral. Therefore, while Bach

was not able to obtain the mortgage on the terms she sought, it is inaccurate to say that she was

denied the mortgage. FUNB argues further that the district court erred in relying on this mortgage

application at all in determining whether Bach had proven actual damages because she failed to

produce any evidence other than her own testimony documenting the failed mortgage application.

FUNB also argues that even if Bach did file the second mortgage application, the district court erred

in finding that the rejection of the application was caused by FUNB's violation because Bach

previously stated in a deposition that the application had been denied because she could not make

the payments as a result of her low income and not because of her damaged credit. However, this

argument must be unavailing, as we may not on review of the district court's denial of a Rule 50(b)

motion "weigh the evidence, evaluate the credibility of the witnesses, or substitute our judgment for

that of the jury." *Wehr v. Ryan's Family Steak Houses, Inc.*, 49 F.3d 1150, 1152 (6th Cir. 1995).

Because the district court was required to view the evidence in the light most favorable to Bach, the

court did not err in considering the second mortgage application as a source of actual damages.

FUNB also argues that the district court erred in relying on Bach's rejected credit card

application in finding that Bach had proved actual damages resulting from FUNB's FCRA violation.

FUNB asserts that the credit report on which Bank One relied in rejecting Bach's application did

not include the false FUNB information from Bach's file and says this false information had already

been deleted. However, the letter Bank One sent to Bach rejecting her credit card application stated

that her application was being rejected due to "credit accounts now delinquent[,] number of accounts

ever delinquent[, and] total available revolving credit." Viewing this evidence in the light most

favorable to Bach, the district court did not err in finding that sufficient evidence was presented from

which a jury could reasonably conclude that a causal link existed between the rejected credit card application and FUNB's FCRA violation.

The district court also relied on evidence produced regarding Bach's pain, suffering, and humiliation. Actual damages for a FCRA violation may include humiliation and mental distress. *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 474 (2d Cir. 1995). An injured person's testimony alone may suffice to establish damages for emotional distress provided that she reasonably and sufficiently explains the circumstances surrounding the injury and does not rely on mere conclusory statements. *United States v. Balistrieri*, 981 F.2d 916, 931-32 (7th Cir. 1992). In this case, Bach testified to the fact that the denial of her second mortgage application, which would have enabled her to purchase the condominium adjacent to her residence and therefore have her granddaughter easily care for her, made her feel "desperate," "ashamed," "embarrassed," and "damn mad." Bach was particularly vulnerable to FUNB's conduct due to the fact that at the time of the violation, she had recently suffered a stroke, and as a result, had limited functioning in her ability to care for herself. Although the stroke was clearly not a result of FUNB's violation, the fact that Bach had suffered a stroke is pertinent to the circumstances surrounding Bach's emotional distress. As a result, Bach presented sufficient evidence from which the jury could reasonably conclude that Bach was entitled to actual damages in the form of pain and suffering. Thus, we affirm the district court's denial of the FUNB's Rule 50(b) motion on the issue of actual damages.

B. **Excessiveness of the Compensatory Damage Award**

We review the district court's decision not to grant a new trial or a remittitur due to the jury's award of damages for an abuse of discretion. *Skalka v. Fernald Envtl. Restoration Mgmt. Corp.*, 178 F.3d 414, 424 (6th Cir. 1999). We review an allegation of excessive compensatory or punitive

damages to determine whether the award was so large such that it shocks the judicial conscience and works a denial of justice. *Rodgers v. Fisher Body Div., Gen. Motors Corp.*, 739 F.2d 1102, 1109 (6th Cir. 1984). A compensatory damage award is not excessive unless it exceeds the maximum amount that a reasonable jury could find to be compensatory. *Skalka*, 178 F.3d at 424-25.

FUNB argues that even if the jury properly found that the evidence supported an award of actual damages, the compensatory damage award of $400,000.00 was excessive, and thus, FUNB is entitled to a new trial or amendment of judgment pursuant to Federal Rule of Civil Procedure 59(a). "A verdict is not excessive unless it exceeds the maximum that a jury could reasonably find to be compensatory for the plaintiff's loss." *Id.* (internal quotation marks and citation omitted). Unless the award is beyond the range that is supported by the proof, shocks the judicial conscience, or is a result of a mistake, the panel must allow the jury verdict to stand. *Bickel v. Korean Air Lines Co.*, 96 F.3d 151, 156 (6th Cir. 1996). This court has noted, albeit under different circumstances, that quantifying pain and suffering is a nearly impossible exercise. *Id.* (upholding jury verdicts for pre-death pain and suffering pursuant to the Death on the High Seas Act). The district court held that, upon review of the evidence presented regarding damages, the jury award of $400,000 "does not shock the conscience."

As noted above, Bach testified to lost credit opportunities in the form of a second denied mortgage application and a denied credit card application[1] as well as injury in the form of pain,

_____

[1]In her brief on appeal, Bach attempts to argue that other instances of lost credit opportunities or damage to creditworthiness, such as the first mortgage application Bach sought and was denied, are proper to consider in reviewing the jury award. However, the instances which occurred prior to the FCRA violation cannot be considered in determining the amount of damages; Bach's first mortgage application, even if denied due to the false information reported by FUNB, was rejected before FUNB was notified by a credit reporting agency that the information it had

suffering and humiliation due to FUNB's violation. The jury verdict did not itemize dollar amounts attributable to each of these injuries, only indicating the total amount of $400,000.00 in compensatory damages.

In an attempt to show that the amount of compensatory damages in this case was excessive, FUNB cites a number of FCRA cases where the compensatory damage award was significantly lower than the amount awarded here. *See, e.g.*, *Bryant v. TRW, Inc.*, 689 F.2d 72, 76-77, 79 (6th Cir. 1982) (upholding award of $8,000.00 in actual damages where inaccuracies "contributed meaningfully" to denial of home loan application and where plaintiff suffered "consequent anguish and humiliation"); *Stevenson v. TRW Inc.*, 987 F.2d 288, 297 (5th Cir. 1993) (upholding damage award of $30,000 for mental anguish where plaintiff experienced "'terrific shock'" and "'considerable embarrassment'" based on credit inaccuracies and where plaintiff was three times denied credit before the inaccuracies were corrected); *Pinner v. Schmidt*, 805 F.2d 1258, 1265-66 (5th Cir. 1986) (ordering either new trial on damages or reduction of $100,000 compensatory damage award to $25,000 based on a finding that original amount was excessive where plaintiff had shown no monetary damages but had shown embarrassment and "deep emotional distress" due to damage to creditworthiness and reputation); *Millstone v. O'Hanlon Reports, Inc.*, 528 F.2d 829, 831, 834 (8th Cir. 1976) (upholding award of $2,500 actual damages where plaintiff suffered "loss of sleep, nervousness, frustration and mental anguish" as a result of the FCRA violation); *Morris v. Credit Bureau of Cincinnati, Inc.*, 563 F. Supp. 962, 969 (S.D. Ohio 1983) (awarding $10,000 in

---

provided was erroneous. Because the denial of the application occurred prior to FUNB's actionable violation of the FCRA, we cannot consider this instance, or any other pre-violation conduct, in reviewing the propriety of the jury award.

compensatory damages for negligent violation of FCRA because "plaintiff suffered significant injury to his reputation, his family, his work and his sense of well-being"). In contrast, Bach cites several cases which upheld large emotional distress damages but where the subject matter of the claim was entirely different. *See, e.g.*, *Bogle v. McClure*, 332 F.3d 1347, 1359 (11th Cir. 2003) (upholding compensatory award of $500,000 to each of seven plaintiffs for emotional harm due to race discrimination); *Che v. Mass. Bay Transp. Auth.*, 342 F.3d 31, 36-37, 42 (1st Cir. 2003) (upholding compensatory damage award of $125,000 for emotional distress due to discrimination based on national origin); *Gagliardo v. Connaught Labs., Inc.*, 311 F.3d 565, 573-74 (3d Cir. 2002) (upholding $2 million dollar compensatory damage award, $1.55 million of which was awarded for pain and suffering due to disability discrimination).

The district court, in considering the arguments of both parties, stated, "Alas, neither party has 'won' the battle of the comparative awards outright. However, the cases cited do show that, while the award in this case may be more than the award in other cases involving FCRA violations and only one or two types of damages, the award in this case is not out of line with cases involving, as this one does, damages due to emotional distress." As a result, the district court found that the compensatory damages awarded here were "not contrary to all reason or so disproportionately large as to shock the conscience." In light of the deferential standard of review, we cannot say that the district court abused its discretion in finding that the compensatory damage award did not shock the conscience and thus was not excessive.

C.      **Excessiveness of the Punitive Damage Award**

We review the district court's determination of the constitutionality of a punitive damage award *de novo*. *Cooper Indus., Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 436 (2001). FUNB argues that the $2,628,600 punitive award is unconstitutionally excessive. The district court reviewed the punitive damage award using the framework laid out in *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 418 (2003), and found that the award was not excessive.

The FCRA provides for an award of punitive damages for willful noncompliance with the statute in an amount "as the court may allow." 15 U.S.C. § 1681n(a)(1)(B)(2). The Fifth Circuit has held that while malice or evil motive is not required to award punitive damages pursuant to 15 U.S.C. § 1681n, the defendant must have committed a willful violation by knowingly and intentionally committing an act in conscious disregard for the rights of others. *Stevenson*, 987 F.2d at 293-94. Because the jury found that FUNB had committed a willful violation of the FCRA, and FUNB does not challenge that finding on appeal, the jury was properly able to award punitive damages.

The Supreme Court's approach to reviewing the constitutionality of a punitive damage award is laid out in the *State Farm* case. In *State Farm*, the Supreme Court noted that punitive awards, designed as tools of deterrence and retribution, have upward limits imposed by the elementary notions of fairness contained in the Due Process Clause. 538 U.S. at 416-17. The Supreme Court laid out three guideposts for courts to consider in reviewing the constitutionality of punitive damage awards: (1) the reprehensibility of the defendant's conduct; (2) the disparity between the actual harm suffered by the plaintiff and the size of the punitive damage award; and (3) the difference between

the punitive damages awarded and the civil or criminal penalties imposed or authorized for comparable misconduct. *Id.* at 418. The Court also emphasized the importance of *de novo* appellate review of the trial court's application of these guideposts. *Id.*

> 1.        **Reprehensibility of Defendant's Conduct**

The Court stated that the degree of reprehensibility of the defendant's conduct is the most important factor in determining the constitutionality of the punitive award. *Id.* at 419. In considering this first guidepost, the Court stated that the following factors are important: (1) whether the harm caused was physical or economic; (2) whether the conduct showed an indifference or reckless disregard for the health or safety of others; (3) whether the target of the conduct was financially vulnerable; (4) whether the conduct involved repeated actions or was merely the result of an isolated instance; and (5) whether the harm was caused by intentional malice, trickery or deceit or was rather accidental. *Id.* "The existence of any one of these factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive damages award; and the absence of all of them renders any award suspect." *Id.*

First, we consider whether the harm caused was physical or economic. Contrary to Bach's assertions in her appellate brief, FUNB's violation in this case was purely economic rather than physical. Similar to the situation in *State Farm*, the harm was a result of "a transaction in the economic realm, not from some physical assault or trauma[, and] there were no physical injuries." *Id.* at 426. Although Bach attempts to argue that the harm caused in this case was both physical and economic because of the resulting emotional distress, this is not the sort of physical injury the *State Farm* case contemplates, and thus, the first factor is not present. *See id.* (noting that plaintiffs were

awarded $1 million for emotional distress, and later noting that no physical injuries were present in the case).

Similarly, because FUNB's actions occurred in the "economic realm," it cannot be said that the tortious conduct displayed an indifference or reckless disregard for the health and safety of others. Therefore, the second indicator of reprehensibility is not met.

Regarding the third factor, it does appear that Bach was a financially vulnerable victim, a contention that FUNB concedes in its brief. FUNB urges this court to find that despite Bach's financial vulnerability, this factor was not met because FUNB did not specifically target Bach because of her vulnerability. However, the factor, as laid out in *State Farm*, does not require that the defendant target the victim specifically because of her vulnerability, but rather requires only that the target be financially vulnerable. Because FUNB does not argue otherwise, this factor of the analysis is met.

Fourth, we consider whether FUNB's conduct was the result of repeated actions or of an isolated incident. It appears that the Supreme Court has interpreted this factor to require that the similar reprehensible conduct be committed against various different parties rather than repeated reprehensible acts within the single transaction with the plaintiff. *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 576-77 (1996) (in considering fourth factor, reviewing whether defendant's actions in this instance "formed part of a nationwide pattern of tortious conduct"); *see also State Farm*, 538 U.S. at 423 (looking for indications that the "conduct in question replicates the prior transgressions" against other insureds in determining whether punitive damage award was justified); *Willow Inn, Inc. v. Pub. Serv. Mut. Ins. Co.*, 399 F.3d 224, 232 (3d Cir. 2005) (noting that the district court

improperly interpreted the fourth factor to mean "a pattern of contemptible conduct within one extended transaction" rather than "specific instances of similar conduct by the defendant in relation to other parties"). Bach argues that this factor is met based on statements made by the Vice-President of FUNB, Fernando Durand, that discussed FUNB's business policies and indicated that FUNB treated Bach's situation in the same way it treated all of its clients. However, Bach did not show that FUNB had engaged in repeated conduct that would violate the FCRA in the past with respect to others, and Durand's testimony cannot be read as an admission that FUNB did so. Therefore, we find that the fourth factor has not been met.

Fifth, the court must consider whether FUNB's actions were the product of intentional malice as opposed to mere accident. FUNB argues that the fact that its actions cannot be considered to rise to the level of intentional malice is evidenced in the district court's grant of a judgment as a matter of law to FUNB on the intentional infliction of emotional distress, invasion of privacy, defamation, and negligence claims. The district court stated in granting FUNB's motion on these claims that while FUNB's actions might have been considered reckless, "no reasonable jury could find that the precondition [was met] that the defendant acted with malice or with willful intent and that there was a conscientious disregard for the rights and safety of others . . . ." In reviewing the punitive damage award, the district court attempted to distinguish these findings based on the fact that they were made with reference to the state law claims as opposed to the FCRA claim. However, regardless of the underlying claim, the district court's finding with regard to whether FUNB acted with malice is pertinent to the examination here, as the inquiry is essentially the same. While the district court's holdings do not support a finding that FUNB's actions were a product of mere

accident, as the court stated that a reasonable juror might have found that the actions were reckless, the findings certainly do not support a finding of intentional malice, trickery, or deceit. Therefore, we find that the last factor is not met.

As a result, only one of the five reprehensibility factors is present in this case. Such a finding does not support the large punitive damage award in this case.

### 2.      **Disparity Between Harm Suffered and Size of Punitive Award**

Second, *State Farm* directs this court to consider the ratio of actual harm suffered by the plaintiff to the punitive damage award. The Supreme Court has declined to create a bright-line rule regarding the permissible ratio, but has stated that awards exceeding a single-digit ratio will rarely be upheld against a constitutional challenge, and noted that in the past, the court considered a four-to-one ratio to be "close to the line of constitutional impropriety." *State Farm*, 538 U.S. at 424-25. The Court noted that where the amount of compensatory damages is high, a lesser amount of punitive damages, perhaps only in an amount equal to the compensatory damages, may comport with due process. *Id*. at 425.

The ratio of punitive to compensatory damages in this case is roughly 6.6:1. This ratio is alarming, especially considering the fact that much of the compensatory damage award must be attributable to Bach's pain and suffering. This fact compels the conclusion that the punitive damage award is duplicative, and that either a new trial on punitive damages or a remittitur of the damages awarded is appropriate. The Supreme Court's observations about the ratio of punitive to compensatory damages awarded in *State Farm* are equally applicable to this case:

> The compensatory damages for the injury suffered here . . . likely were based on a
> component which was duplicated in the punitive award. Much of the distress was

> caused by the outrage and humiliation [the plaintiffs] suffered at the actions of [the defendant]; and it is a major role of punitive damages to condemn such conduct. Compensatory damages, however, already contain this punitive element. *See* Restatement (Second) of Torts, § 908, Comment c, p.466 (1977) ("In many cases in which compensatory damages include an amount for emotional distress, such as humiliation or indignation aroused by the defendant's act, there is no clear line of demarcation between punishment and compensation and a verdict for a specified amount frequently includes elements of both.").

*Id.* at 426. *See also Boerner v. Brown & Williamson Tobacco Co.*, 394 F.3d 594, 603 (8th Cir. 2005) (reducing punitive damages to equal to the amount of compensatory damages where ratio of punitive to compensatory damages was 4:1 because the compensatory damages awarded were substantial and no other factor justifying the high ratio, such as "the presence of an injury that is hard to detect or a particularly egregious act that has resulted in only a small amount of economic damages," was present) (internal quotation marks, citation, and alteration omitted).  As such, our evaluation of the ratio of punitive to compensatory damages awarded in this case supports FUNB's argument that the punitive damage award is excessive.

> 3. **Comparison of the Punitive Damage Award with Comparable Civil or Criminal Penalties**

*State Farm* next directs this court to consider the disparity between the punitive damage award and the civil or criminal penalties imposed or authorized in comparable cases.  The maximum civil penalty that the Federal Trade Commission can seek for knowing violations of the FCRA is $2,500 per violation.  15 U.S.C. § 1681s(a)(2)(A).  However, this limit is not applicable to actions

brought under the FCRA by private citizens.  Thus, this guidepost is not particularly helpful in assessing the constitutionality of the punitive damage award.**2**

Our consideration of the three *State Farm* guideposts causes us to conclude that the punitive damage award in this case was unconstitutionally excessive.  We therefore reverse the award of punitive damages and remand the case to the district court for either a new trial on the punitive damages issue or for a remittitur of the jury verdict.

D.       **New Trial Based on Improper Passion and Prejudice of the Jury**

Where a defendant alleges that the result of a trial was the product of passion or prejudice and seeks a new trial, we review the district court's determination on the issue for an abuse of discretion.  *Blasky v. Wheatley Trucking, Inc.*, 482 F.2d 497, 498 (6th Cir. 1973).  FUNB argues that the district court abused its discretion in failing to grant a new trial pursuant to Rule 59(a) based on its assertion that the jury verdict was a result of improper passion and prejudice.  FUNB argues that the fact that the jury was exposed to events occurring prior to FUNB's violation of the FCRA, such

---

**2**Both parties cite past punitive damage awards, some involving violations of the FCRA and others involving unrelated claims, in support of their respective arguments regarding the propriety of the amount of punitive damages awarded in this case under this guidepost.  Because the Supreme Court directs the lower courts to compare the award with civil and criminal *penalties* authorized and imposed rather than with civil and criminal damage awards imposed in comparable cases, the amount of punitive damages awarded in past cases is irrelevant to our inquiry.  *See Gore*, 517 U.S. at 583 (indicating that the purpose behind the comparison of the punitive damage award with comparable civil and criminal penalties is that the "reviewing court engaged in determining whether an award of punitive damages is excessive should accord substantial deference to legislative judgments concerning appropriate sanctions for the conduct at issue") (internal quotation marks and citations omitted).

Bach also argues that the criminal penalties imposed for extortion should be considered under this prong of the analysis.  However, the crime of extortion is not sufficiently analogous to warrant consideration, and therefore, Bach's arguments on this point are similarly irrelevant.

as its collection efforts against Bach before the credit reporting agency notified FUNB of the allegations of fraud, as well as the size of the compensatory and punitive damage award, support an inference the jury verdict was a product of passion and prejudice. The district court rejected these arguments, stating that FUNB's actions prior to the FCRA violation were relevant to the question of whether the violation was willful, and the damage award was not excessive and therefore was not the result of passion or prejudice on the part of the jury.

"There can be no justice in a trial by jurors inflamed by passion [or] warped by prejudice." *Groppi v. Wisconsin*, 400 U.S. 505, 511 n.12 (1971) (quoting *Crocker v. Justices of Superior Ct.*, 94 N.E. 369, 376-77 (Mass. 1911)). An excessive award of damages can support an inference of bias, passion and prejudice. *Auster Oil & Gas, Inc. v. Stream*, 835 F.2d 597, 603 (5th Cir. 1988). We can only reverse the district court's decision that the jury verdict was not a product of passion and prejudice upon a "definite and firm conviction . . . that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Conte v. Gen. Housewares Corp.*, 215 F.3d 628, 637 (6th Cir. 2000) (internal quotation marks and citation omitted).

Given this standard of review, it cannot be said that the district court abused its discretion in denying FUNB's motion for a new trial. The district court's finding that FUNB's pre-violation conduct is relevant to the question of willfulness of the FCRA violation is reasonable and should not be disturbed. The compensatory damages awarded in this case were not excessive, so the district court's ruling on this point should also not be disturbed. Although we do find that the punitive damage award is unconstitutionally excessive, we have chosen to use the less drastic measure of

remanding for either a new trial on only the punitive damage issue or a remittitur rather than granting a new trial on all of the issues. As a result, we affirm the district court's decision to deny FUNB's Rule 59(a) motion.

## III.

For the foregoing reasons, we affirm the district court's denial of FUNB's motion with respect to actual damages awarded. We also affirm the district court's ruling that the compensatory damage award was not excessive. Additionally, we find that the district court did not abuse its discretion in denying FUNB's motion for a new trial pursuant to Rule 59(a). However, because the punitive damages awarded in this case were unconstitutionally excessive, we reverse and remand on the punitive damages issue.