*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0176p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

DOROTHY B. BACH,

> *Plaintiff-Appellee,*

*v.*

No. 06-3660

FIRST UNION NATIONAL BANK,

> *Defendant-Appellant.*

---

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 01-00191—Thomas M. Rose, District Judge.

Argued: April 18, 2007

Decided and Filed: May 15, 2007

Before: GIBBONS and COOK, Circuit Judges; PHILLIPS, District Judge.[*]

---

## COUNSEL

**ARGUED:** Evan M. Tager, MAYER, BROWN, ROWE & MAW, Washington, D.C., for Appellant. Michael C. Eckert, ECKERT & ECKERT, Springboro, Ohio, for Appellee. **ON BRIEF:** Evan M. Tager, Miriam R. Nemetz, MAYER, BROWN, ROWE & MAW, Washington, D.C., Barbara F. Yaksic, Cleveland, Ohio, John C. Deal, WINKLER & WINKLER, Columbus, Ohio, for Appellant. Michael C. Eckert, Roger C. Eckert, ECKERT & ECKERT, Springboro, Ohio, for Appellee.

---

## OPINION

---

JULIA SMITH GIBBONS, Circuit Judge. Following trial, a jury determined that defendant-appellant First Union National Bank (FUNB) breached certain provisions of the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681-1681x, and awarded $400,000 in compensatory damages and $2,628,600 in punitive damages to plaintiff-appellee, Dorothy Bach. FUNB appealed, claiming, among other things, that the punitive damages award was excessive and in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. We agreed and accordingly remanded to the district court for either remittitur or a new trial on punitive damages. The district court offered Bach the choice between a $400,000 reduction in the punitive damages

---

[*]The Honorable Thomas W. Phillips, United States District Judge for the Eastern District of Tennessee, sitting by designation.

award or a new trial, and Bach chose the former. FUNB appealed. For the reasons below, we reverse the judgment of the district court and direct it to enter an order of remittitur not to exceed $400,000 in punitive damages.

I.

The facts of this case are fully set forth in our original decision in *Bach v. First Union Nat'l Bank (Bach I)*, No. 04-3899, 149 F. App'x 354 (6th Cir. Aug. 22, 2005), and we restate them here only where necessary. A jury awarded Bach $400,000 in compensatory damages and $2,628,600 in punitive damages after finding that FUNB had violated the FCRA. After denying FUNB's post-verdict motions for judgment as a matter of law, remittitur, and a new trial, the district court entered judgment for Bach. FUNB filed a notice of appeal.

On appeal to this court, FUNB argued, among other things, that the punitive damages award was unconstitutionally excessive. We agreed, reversed the award of punitive damages, and remanded the case to the district court with instructions to hold a new trial on the issue of punitive damages or for remittitur of the punitive damages award. *Bach I*, 149 F. App'x at 368. On remand, the district court issued an order providing Bach with twenty days to elect to accept a new punitive damages award in the amount of $2,228,600 or return to trial on the punitive damages issue. *Bach v. First Union Nat'l Bank*, No. 3:01-CV-191, 2006 WL 840381 (S.D. Ohio March 30, 2006). Bach accepted the reduced award, and the district court entered judgment in the amount of $2,228,600 in her favor. FUNB filed a timely notice of appeal.

II.

We review the district court's decision on the constitutionality of the punitive damages award *de novo*. *Cooper Indus., Inc. v. Leatherman Tool Group*, 532 U.S. 424, 436 (2001). The conclusions in *Bach I* constitute the law of the case for this matter, and will govern our consideration of the issues in this second appeal. *See Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006) ("The law of the case doctrine . . . precludes a court from reconsideration of issues 'decided at an early stage of the litigation, either explicitly or by necessary inference from the disposition.'") (quoting *Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997)).

"The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003). In *State Farm*, the Supreme Court outlined three guideposts appropriate for consideration in determining whether a particular punitive damages award exceeds the boundaries of constitutional propriety. First, the court must assess the reprehensibility of the defendant's misconduct, that is, whether

> the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*Id.* at 419. Second, a reviewing court should consider the disparity between the actual or potential harm suffered by the plaintiff – the injury covered by any compensatory damages award – and the punitive damages award. *Id.* at 424. Finally, the court may look to the difference between the relevant punitive damages award and the civil penalties authorized or imposed in similar cases. *Id.* at 428.

In *Bach I,* we relied upon the first two *State Farm* guideposts in determining that the punitive damages award exceeded constitutional boundaries.[1]  The record established the existence of only one of the reprehensibility factors identified in *State Farm*, that is, that Bach constituted a vulnerable victim.  149 F. App'x at 365.  The absence of any of the other factors establishing reprehensibility cut in favor of reduction of the punitive damages award.  *Id.* at 366.  We further determined that the ratio of punitive damages to compensatory damages in this case, 6.6:1, was "alarming."  *Id.*  The 6.6:1 ratio was of particular concern because it appeared likely that the jury improperly duplicated the compensatory damages award in the punitive damages award.  *Id.*

On remand, the district court attributed our reversal to two factors: the unacceptable ratio of punitive to compensatory damages and the jury's seeming duplication of the compensatory damages award in the amount of punitive damages.  *Bach*, 2006 WL at 840381, at *5.  The court reasoned that remittitur to $2,228,600 adequately addressed our concern that the jury had erroneously incorporated the compensatory damages award into the amount of punitive damages.  *Id.*  The award the district court proposed, it determined, "complie[d] with the specific findings of the Sixth Circuit while maintaining the sanctity of the initial jury award."  *Id.*  The district court rejected FUNB's argument that a reduction of the punitive damages award to $400,000, or a ratio of 1:1, was necessary to satisfy our mandate.  It noted that "had the Sixth Circuit thought a 1:1 ratio was appropriate in this case, it surely would have said so."  *Id.* at *4.  In this second appeal, FUNB insists that the district court's resolution did not adequately resolve the constitutional issues raised by the jury's initial punitive damages award.  We agree.

While the district court's remedy on remand eliminated any concern regarding the potential duplication of compensatory damages and ultimately achieved a lesser ratio, of 5.57, it did not address our additional observation that, in light of the factors used in assessing reprehensibility, FUNB's actions were comparatively less egregious.  *Bach I*, 149 F. App'x at 366 ("[O]nly one of the five reprehensibility factors is present in this case.  Such a finding does not support the large punitive damage award in this case.").  This element also informed our conclusion that a ratio of approximately 6.6:1 was "alarming."  *See id*.  The district court failed to factor this portion of our decision into its analysis.

This is not an insignificant omission.  "Perhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct."  *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996).  Our court has explained that in reviewing punitive damages awards, a court should assume that any compensatory damage award has sufficiently made a plaintiff whole for her injuries.  *See Romanski v. Detroit Entm't, LLC*, 428 F.3d 629, 643 (6th Cir. 2005).  Therefore, punitive damages are appropriate only where "the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence."  *Id.* (quoting *State Farm*, 538 U.S. at 419).  In neglecting to account for the portion of our ruling considering the reprehensibility of FUNB's conduct, the district court both failed to evaluate properly the size of the punitive damages award and erroneously concluded that a reduction of $400,000 would sufficiently resolve any existing constitutional issues.

We recognize that FUNB engaged in blameworthy conduct in this case.  As the jury's verdict established, FUNB continued to report unfavorable credit information regarding Bach even after receiving notification from Bach, an elderly widow, that the information was inaccurate.  Without question, these actions merit strong disapproval and justify an award of punitive damages.  *See BMW*, 517 U.S. at 576 (noting that a "substantial penalty" may be appropriate where a defendant

---

[1]The third factor provided little assistance in this case, because the FCRA does not include a limit on damages for civil actions brought under the statute by private citizens.  *Bach I*, 149 F. App'x at 367.

inflicts economic injury against a financially vulnerable target); *see also Clark v. Chrysler Corp.*, 436 F.3d 594, 604 (6th Cir. 2006) ("The financial vulnerability of a target is particularly relevant when the harm inflicted is economic in nature.").

However, the vulnerability of a victim, without more, ought not be the basis for "convert[ing] all acts that cause economic harm into torts that are sufficiently reprehensible to justify a significant sanction in addition to compensatory damages." *BMW*, 517 U.S. at 576. Here, as we determined in *Bach I*, FUNB's actions, while properly the basis for liability, were not particularly outrageous as judged by the reprehensibility factors set forth in *State Farm*. FUNB did not act with "reckless disregard for the health and safety of others," engage in repeated instances of misconduct, or act with "intentional malice." 149 F. App'x at 365. The absence of these factors substantially undercuts Bach's attempts to justify the size of the punitive damages award in this case.

"[B]ased upon the facts and circumstances of the defendant's conduct and the harm to the plaintiff," *State Farm*, 538 U.S. at 425, a punitive damages award of slightly more than $2.2 million exceeds the boundaries of constitutionality in this case. Bach, for her part, seeks to justify the size of the punitive damages award by emphasizing First Union's substantial wealth, which at the time of the violations in question included approximately $254,000,000 in assets.[2] While a punitive damages award must remain of sufficient size to achieve the "twin purposes of punishment and deterrence," *Romanski*, 428 F.3d at 649, a defendant's wealth "cannot justify an otherwise unconstitutional punitive damages award," *State Farm*, 538 U.S. at 427.

As to the proper method of disposing of this appeal, the parties agreed during oral argument that, in the event of remand, we should establish a constitutional maximum to guide the district court's actions in order to expedite final resolution of this case. Our court has taken this approach in the past, and we believe that it is in the interests of the parties and the general spirit of preserving limited judicial resources to follow this course in this case. *See, e.g.*, *Romanski*, 428 F.3d at 649-50 (concluding that award of "no greater than $600,000 . . . would satisfy the demands of the due process clause"); *Clark*, 436 F.3d at 612 (reversing and remanding with instructions to enter order of remittitur of punitive damages in the amount of $471,258.26).

In ascertaining an appropriate ceiling, we note the absence of hard and fast standards or mathematical precision in punitive damages jurisprudence. *See BMW*, 517 U.S. at 582-83 ("We need not, and indeed we cannot, draw a mathematical bright line between the constitutionally acceptable and the constitutionally unacceptable that would fit every case."). Although the Supreme Court has refused to create a rigid, formulaic system for gauging the constitutionality of punitive damages awards, *see State Farm*, 538 U.S. at 425, it has, in *dicta*, set forth, in the most general terms, certain principles that we find useful in this case. The Court in *State Farm* deemed it "instructive" that its earlier cases had identified the possibility that "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." *Id.* Moreover, the Court observed that "[w]hen compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limits of the due process guarantee." *Id.* at 425.

These statements do not compel a particular result in this case, as they are not the holdings of the Court. Nevertheless, in an area lacking firm rules of easy application, they serve as helpful guidelines and support our conclusion that an award of punitive damages at or near the amount of compensatory damages would be appropriate here. While we do not deny FUNB's culpability and the appropriateness of punitive damages in this case, the facts before us simply do not justify a

---

[2]Following a merger in September 2001, FUNB became part of Wachovia. According to its website, Wachovia, as of December 31, 2006, had $707 billion in assets. Wachovia Company Facts, http://www.wachovia.com/inside/page/0,,132_148,00.html.

departure from the general principle that a plaintiff who receives a considerable compensatory damages award ought not also receive a sizeable punitive damages award absent special circumstances. This is not a case, for example, where "a particularly egregious act has resulted in only a small amount of economic damages." *Id.* (internal quotation marks omitted); *see also Romanski*, 428 F.3d at 645 (directing the district court to remit punitive damages award from $875,000 to $600,000 and deeming ratio of 2150 to 1 acceptable where "basis for punitive damages award was the plaintiff's unlawful arrest and the plaintiff's economic injury was so minimal as to be essentially nominal"). Rather, this case more closely mirrors the hypothetical scenario described in *State Farm*, where the plaintiff has received a substantial compensatory damages award, and a ratio of 1:1 or something near to it is an appropriate result. *State Farm*, 538 U.S. at 425; *see also Boerner v. Brown & Williamson Tobacco Co.*, 394 F.3d 594, 603 (8th Cir. 2005) (reducing punitive damages award from $15 million in punitive damages to $5 million, or "a ratio of approximately 1:1," where jury awarded $4,025,000 in compensatory damages on the ground that "[f]actors that justify a higher ratio . . . are absent here"). We conclude accordingly that $400,000, the amount of compensatory damages, constitutes an appropriate limit on punitive damages in this case.

To be clear, we would be wary of any attempt to graft our ruling here onto another set of facts. Ascertaining the constitutionally correct amount of punitive damages in a given case is a highly fact-intensive exercise, and the facts before us drive our conclusion in this case. *See TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443, 457 (1993) ("Because no two cases are truly identical, meaningful comparisons of [punitive damages] awards are difficult to make."). Nor should our decision here be read as a departure from our longstanding policy of respect for the decisions of juries and trial courts who possess the benefit of first-hand observation of the facts. We merely conclude on this record that the facts underlying Bach's claim do not justify an award of slightly more than $2.2 million and that, in this case, $400,000 constitutes the outer boundary of what the Constitution will permit in punitive damages.

III.

We accordingly reverse the district court's April 11, 2006, judgment and remand with instructions to enter an order of remittitur reducing the punitive damages award to no more than $400,000.